UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALVIN R. BEAN                                                CIVIL ACTION

VERSUS                                                      NO:  11-3157

JOSHUA HUNT, ET AL.                                         SECTION: "S" (2)

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion to for Judgment on the Pleadings (Doc. #18)

filed by defendants, the City of New Orleans and Chief/Superintendent Ronal Serpas, is **GRANTED**

as unopposed as to plaintiff's claims against the New Orleans Police Department, and those claims

are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion is **DENIED** as to plaintiff's claims against

the City and official capacity claims against Serpas brought under 42 U.S.C. § 1983.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** as to plaintiff's individual

capacity claims against Serpas, and those claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** the motion is **DENIED** as to plaintiff's state law claims

under the theory of respondeat superior brought against the City.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** as to plaintiff's punitive

damages claims against the City and Serpas in his official capacity, and those claims are

**DISMISSED WITH PREJUDICE**.

### BACKGROUND

This matter is before the court on a motion for judgment on the pleadings filed by

defendants, the City of New Orleans, and Chief/Superintendent of the New Orleans Police

Department, Ronal Serpas.

On December 27, 2011, plaintiff, Alvin R. Bean, filed this suit against the City of New Orleans, the New Orleans Police Department, Chief Ronal Serpas, Officer Joshua Hunt and Officer Samuel Birks, alleging claims under 42 U.S.C. § 1983 and Louisiana state law for the violation of his civil rights.  Bean alleges that on January 25, 2011, he was approached by Birks when he was exiting his apartment.  Birks was driving a marked police vehicle and was wearing a NOPD uniform. Birks told Bean that he looked suspicious, placed Bean in handcuffs and put Bean in the backseat of the police vehicle.  Bean asked Birks if he were under arrest, and the nature of the charges.  Birks replied that he wanted Bean to give him information regarding narcotics sales in the neighborhood. Bean told Birks that he had no such information.

Birks received a telephone call from Hunt requesting that Birks pick Hunt up from a dental appointment, and Birks did so with Bean still handcuffed in the backseat of the police vehicle. Thereafter, they drove back to Bean's neighborhood and continued to ask Bean about narcotics sales in the area.  Birks and Hunt told Bean that they would release him if he would identify drug dealers, and Bean reiterated that he did not have such information.

Birks and Hunt did a computer investigation of Bean's criminal record and discovered that Bean had three prior convictions and was on parole.  Hunt placed some cocaine base in a plastic sleeve from his cigarette pack and put it in Bean's jacket pocket.  Birks and Hunt drove Bean to the police station, arrested him for possession of cocaine and had him booked into the Orleans Parish Prison's central lock up.

On March 17, 2011, the Orleans Parish Criminal Court held Bean's Preliminary Hearing and heard a Motion to Suppress.  Hunt testified that he and Birks were on foot patrol in the Jackson

Landing apartment complex when Birks observed Bean engaged in a hand-to-hand drug transaction, which Birks communicated to Hunt via radio.  Hunt testified that he and Birks approached Bean on the landing of the apartment complex, Birks conducted a pat-down search of Bean and a small amount of cocaine base fell out of Bean's jacket pocket, which Hunt picked up off of the ground.  Hunt also testified that he and Birks then arrested Bean and brought him to the police station.

Bean filed a subpoena duces tecum seeking Hunt's dental records in the Orleans Parish Criminal Court.  Those records revealed that Hunt was at the dentist's office at the time that the police report indicates that he was investigating Bean.  After Hunt's dental records were presented to the court, the Orleans Parish District Attorney dropped the charges against Bean, and Bean was released from the Orleans Parish Prison on June 4, 2011.  Thereafter, Hunt pleaded guilty to perjury and malfeasance in office, and Birks pleaded guilty to malfeasance in office.

On December 27, 2011, Bean, filed this suit against the City, the NOPD, Serpas, Hunt and Birks, alleging claims under 42 U.S.C. § 1983 and Louisiana state law for the violation of his civil rights.  In Count I, Bean alleges claims under § 1983 against Hunt and Birks.  In Count II, Bean alleges that the defendants conspired to violate his civil rights.  In Count III, Bean alleges § 1983 claims against the City and Serpas, in his individual capacity as a supervisor and his official capacity as the chief/superintendent of the NOPD.  Finally, in Count IV, Bean alleges various state law claims against Hunt, Birks, and the City.[1]

The City and the Serpas filed the instant motion for judgment on the pleadings arguing that Bean failed to sufficiently state a claim against the City and Serpas in his official capacity that

---

[1] In his memorandum in opposition to the City and Serpas' motion for judgment on the pleadings (Doc. #34), Bean clarifies that he did not plead any state law claims against Serpas.  Bean also stipulates that the NOPD is not an entity capable of being sued, and that his claims against the NOPD should be dismissed.

satisfies the requirements of <u>Monell v. N.Y.C. Dept. of Soc. Serv.</u>, 98 S.Ct. 2018 (1978).  The City also argues that Bean failed to state a claim against it under the state law theory of respondeat superior, and Serpas argues that Bean's failed to state a claim against him in his individual capacity. Finally, the City argues that Bean cannot maintain a claim against it for punitive damages.

## ANALYSIS

### A.      Rule 12(c) of the Federal Rules of Civil Procedure

A party may move for judgment on the pleadings after an answer has been filed.  FED. R. CIV. P. 12(c).  "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." <u>Chauvin v. State Farm & Cas. Co.</u>, 495 F.3d 232, 237 (5th Cir. 2007).  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007) (quoting <u>Bell Atlantic v. Twombly</u>, 127 S.Ct. 1955, 1964-65 & 1973 n.14 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id</u>. at 1965.  The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." <u>In re S. Scrap Material Co., LLC</u>, 541 F.3d 584, 587 (5th Cir. 2008). A district court may consider only the contents of the pleading and the attachments thereto. <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).

### B.      Section 1983

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C.

§1983; <u>Monell</u>, 98 S.Ct. 2018.   Section 1983 is not itself a source of substantive rights; it merely

provides a method for vindicating federal rights conferred elsewhere. <u>Olabisiomotosho v. City of</u>

<u>Hous.</u>, 185 F.3d 521, 525 n. 3 (5th Cir. 1999).

   To pursue a claim under section 1983, plaintiff must: (1) allege a violation of rights secured

by the Constitution or laws of the United States, and; (2) demonstrate that the alleged deprivation

was committed by a person acting under color of state law. <u>Sw. Bell Tel., LP v. City of Hous.</u>, 529

F.3d 257, 260 (5th Cir. 2008); <u>see</u> <u>also</u> <u>West v. Atkins</u>, 108 S.Ct. 2250, 2255-54 (1988).

**1.  Claims Against the City and Official Capacity Claims Against Serpas**

   Bean alleges that the City is liable for the violations of his civil rights, and that Serpas is

liable in his official capacity as the Chief/Superintendent of the NOPD.

   A suit against Serpas in his official capacity is in essence a suit against the City.  <u>Woodard</u>

<u>v. Andrus</u>, 419 F.3d 348, 352 (5th Cir. 2005) (citing <u>Monell</u>, 98 S.Ct. at 2035, n.55).  A local

governmental body is liable for damages under §1983 for constitutional violations resulting from

official city policy.  <u>See</u> <u>Monell</u>, 98 S.Ct. at 2035-36.  A municipality or government body cannot

be held vicariously liable under §1983 for the constitutional torts of its employees or agents.  <u>Id</u>. at

2037.  Consequently, the unconstitutional conduct must be directly attributable to the municipality

through some sort of official action or imprimatur; isolated unconstitutional actions by municipal

employees will almost never trigger liability. <u>Piotrowski v. City of Hous.</u>, 237 F.3d 567, 578 (5th

Cir. 2001).  To establish liability for a constitutional violation against the governmental bodies, the

plaintiff must prove three elements: (1) a policy maker; (2) an official policy; and (3) a violation of

constitutional rights whose "moving force" is the policy or custom.  <u>Monell</u>, 98 S.Ct. at 2037.

The "policy maker" prong is satisfied if actual or constructive knowledge of a policy is attributable to the municipality's governing body or to an official to whom the municipality has delegated policy making authority. Webster v. City of Hous., 735 F.2d 838, 842 (5th Cir. 1984) (en banc). Presumptive policymakers for the police include the mayor, the city counsel and the chief of police. Id.

The "official policy" prong requires that the deprivation of constitutional rights be inflicted pursuant to an official custom or policy. "Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations." Piotrowski, 237 F.3d at 579. However, a policy may also be a custom that is ". . . a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy . . ." Id. (quoting Webster, 735 F.2d at 841).

To satisfy the "moving force" prong, the plaintiff must show culpability and causation. A municipality is culpable under §1983 if: (1) the official policy is unconstitutional; or (2) if the official policy was "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." Id. (quoting Bd. of Comm'rs of Bryan Cnty., Okla. v. Brown, 117 S.Ct. 1382, 1389 (1997)). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." Id. (quoting Bryan Cnty., 117 S.Ct. at 1389). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . ." Alton v. Tex. A & M Univ., 168 F.3d 196, 201 (5th Cir. 1999). "For an official to act with deliberate indifference, the official must be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." City of Canton v. Harris, 109 S.Ct. 1197, 1204. Generally, proving deliberate indifference requires proving a pattern of violations. Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003) (quoting Thompson v. Upsher Cnty., 245 F.3d 447, 459 (5th Cir. 2001)).

In their motion for judgment on the pleadings, the City and Serpas argue that Bean's complaint is insufficient to plead a claim against the City or a claim against Serpas in his official capacity. Specifically, they contend that Bean has not sufficiently pleaded that there was a policy maker, and that an official policy was the moving force behind the violation of his constitutional rights.

Count III of Bean's complaint alleges the Monell claims against the City and Serpas in his official capacity. Paragraph 62 alleges that Serpas was a policy maker. Paragraphs 55 through 60 allege that the NOPD failed to adopt policies to prevent the violation of criminal suspects' civil rights; failed to maintain a custom or policy regarding the identification and discipline of police officers who violate criminal suspects' civil rights; negligently retained police officers who violated criminal suspects' civil rights; had improper procedures for training, hiring and retaining officers; ignored patters and practices of abuse; and, had a policy and procedure of engaging in illegal activities to illegally secure arrests. In paragraph 58 Bean alleges that these policies and procedures were the driving force of the deprivation of his civil rights.

Rule 8(a)(2) of the Federal Rules of Civil Procedure states that pleadings must contain a short and plain statement of the claim showing that the pleader is entitled to relief. To comply with Rule 8(a)(2) a plaintiff does not need to plead specific facts, but only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 127 S.Ct. at 1959 (quoting

7

Conley v. Gibson, 78 S.Ct. 99, 103 (1957)),  Further, if a complaint alleges facts upon which relief can be granted, the form is not important, even if it does not correctly categorize the legal theory giving rise to the claim.  Peavy v. WFAA-TV, Inc., 221 F.3d 158, 167 (5th Cir. 2000) (citing Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 604 (5th Cir. 1981)).

Bean's complaint meets the pleading requirements of Rule 8(a)(2) because the City and Serpas are given fair notice of Bean's Monell claims against them.  Bean alleges that Serpas was a policy maker, the NOPD had unconstitutional policies or a lack of policies, and that those policies were the moving force behind the alleged violations of his constitutional rights.  Therefore, the City and Serpas' motion for judgment on the pleadings is DENIED as to Bean's claims against the City and his official capacity claims against Serpas.

### 2.  Individual Capacity Claims Against Serpas

Bean alleges that Serpas is liable for Hunt and Birks' actions in his individual capacity as their supervisor.

"Plaintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation.  This standard requires more than constitutional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citations omitted).  Additionally, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).

In paragraph 62, Bean alleges that Serpas is responsible for his subordinates' actions in relation to the violations of Bean's civil rights by:

> a.  Failing to properly hire, train, discipline and/or supervise the
>     police officers under his command;

b.  Failing to adopt and enforce reasonably appropriate policies, practices, and procedures for the operation and administration of the internal affairs of the New Orleans Police Department;

c.  Condoning a pattern, practice and/or custom of police officer intimidations and abuse, and by failing to take appropriate and reasonable measures to ensure that the members of the general public are protected from unlawful searches, seizures, and extortion by members of the New Orleans Police Department;

d.  Failure to adequately investigate and take appropriate disciplinary action for misconduct by members of the New Orleans Police Department;

e.  Failing to maintain close supervision, monitoring, and accountability of members of th New Orleans Police Department who have violated criminal suspects' civil rights.

These allegations regarding the supervision of the NOPD officers are really claims against Serpas in his official capacity.  Bean makes no factual allegations against Serpas that indicate that Serpas was directly and personally involved in the events giving rise to his claims of civil rights violations.  Therefore, Bean has not properly stated an individual capacity claim against Serpas, and any such claim is DISMISSED WITH PREJUDICE.

**3.  Respondeat Superior State Law Claims Against the City**

The City argues that Bean has not stated a claim against it for state law claims under the theory of respondeat superior because Hunt and Birks were not acting in their official capacities when they arrested Bean.  Louisiana Civil Code article 2320 provides that employers are responsible for damages caused by their employees "in the exercise of the functions in which they are employed." Bean has alleged that Hunt and Birks were acting in their official capacities under the color of state law at all pertinent times.  Determining whether this allegation is true requires an analysis of the facts of the case that is beyond the scope of a motion for judgment on the pleadings.

Therefore, the City's motion for judgment on the pleading regarding Bean's state law claims under the theory of respondeat superior is DENIED.

### 4.  Punitive Damages Claims Against the City

Bean seeks punitive damages against all of the defendants.  In <u>City of Newport v. Fact Concerts, Inc.</u>, 101 S.Ct. 2748 (1981), the Supreme Court of the United States held that municipalities are immune from punitive damages in § 1983 lawsuits. <u>See</u> <u>also</u> <u>Webster v. City of Hous.</u>, 689 F.2d 1220, 1228 (5th Cir. 1982)).  Further, punitive damages may not be levied against defendants in their official capacities, because official capacity claims are tantamount to claims against the municipality.  <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Kentucky v. Graham</u>, 105 S.ct. 3099 (1985).  Thus, Bean's claims for punitive damages against the City and Serpas in his official capacity are DISMISSED WITH PREJUDICE.

### CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to for Judgment on the Pleadings (Doc. #18) filed by defendants, the City of New Orleans and Chief/Superintendent Ronal Serpas, is **GRANTED** as unopposed as to plaintiff's claims against the New Orleans Police Department, and those claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion is **DENIED** as to plaintiff's claims against the City and official capacity claims against Serpas brought under 42 U.S.C. § 1983.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** as to plaintiff's individual capacity claims against Serpas, and those claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** the motion is **DENIED** as to plaintiff's state law claims under the theory of respondeat superior brought against the City.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** as to plaintiff's punitive damages claims against the City and Serpas in his official capacity, and those claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this  23rd  day of April, 2013.

MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE