## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALVIN R. BEAN** | **CIVIL ACTION** |
| **VERSUS** | **NO: 11-3157** |
| **JOSHUA HUNT, ET AL.** | **SECTION: "S" (2)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion to for Judgment on the Pleadings or Alternative Motion for Summary Judgment (Doc. #51) filed by defendants, the City of New Orleans and Chief/Superintendent Ronal Serpas, in his official capacity is **DENIED.**

### BACKGROUND

This matter is before the court on a motion for judgment on the pleadings, or alternative motion for summary judgment, filed by defendants, the City of New Orleans, and Chief/Superintendent of the New Orleans Police Department, Ronal Serpas in his official capacity. Defendants argue that plaintiff, Alvin R. Bean, did not state a claim against them under 42 U.S.C. § 1983 and Monell v. N.Y.C. Dept. of Soc. Serv., 98 S.Ct. 2018 (1978), because the NOPD had policies in place prohibiting the behavior exhibited by defendants Samuel Birks and Joshua Hunt. Defendants also argue that Birks and Hunt were not acting in the course and scope of their employment with the NOPD at the pertinent times.[1]

---

[1]   Serpas argues that he is entitled to qualified immunity.  "Qualified immunity" is a state-actor's defense related to claims brought against him in his individual capacity. See McCreary v. Richardson, 2013 WL 5514746 (5th Cir. 10/7/2013) (quoting Harlow v. Fitzgerald, 102 S.Ct. 2727 (1982)).  This court previously dismissed, with prejudice, all of Bean's claims against Serpas in his individual capacity because the allegations failed to identify Serpas' direct, personal involvement in the events in question, and were thus really claims against Serpas in his official capacity (Doc. #36).  Defendants also argue that Bean's punitive damages claims against the City and Serpas in his official capacity should be dismissed because punitive damages are not available against municipalities in actions brought under § 1983.  This court previously dismissed, with prejudice, Bean's punitive damages claims against the City and Serpas in his official capacity for that reason. (Doc. #36) (citing City of Newport v. Fact Concerts, Inc., 101 S.Ct. 2748 (1981)). The United States Magistrate Judge denied Bean's motion to file the amended complaint as to these previously dismissed

On December 27, 2011, Bean filed this suit against the City of New Orleans, the New Orleans Police Department, Chief Ronal Serpas, Officer Joshua Hunt and Officer Samuel Birks, alleging claims under 42 U.S.C. § 1983 and Louisiana state law for the violation of his civil rights. Bean alleges that on January 25, 2011, he was approached by Birks when he was exiting his apartment. Birks was driving a marked police vehicle and was wearing a NOPD uniform. Birks told Bean that he looked suspicious, placed Bean in handcuffs and put Bean in the backseat of the police vehicle. Bean asked Birks if he were under arrest, and the nature of the charges. Birks replied that he wanted Bean to give him information regarding narcotics sales in the neighborhood. Bean told Birks that he had no such information.

Birks received a telephone call from Hunt requesting that Birks pick Hunt up from a dental appointment, and Birks did so with Bean still handcuffed in the backseat of the police vehicle. Thereafter, they drove back to Bean's neighborhood and continued to ask Bean about narcotics sales in the area. Birks and Hunt told Bean that they would release him if he would identify drug dealers, and Bean reiterated that he did not have such information.

Birks and Hunt did a computer investigation of Bean's criminal record and discovered that Bean had three prior convictions and was on parole. Hunt placed some cocaine base in a plastic sleeve from his cigarette pack and put it in Bean's jacket pocket. Birks and Hunt drove Bean to the police station, arrested him for possession of cocaine and had him booked into the Orleans Parish Prison's central lock up.

---

claims (Doc. #37). Thus, this court need not address defendants' arguments regarding Serpas' qualified immunity or the unavailability of punitive damages against the City and Serpas in his official capacity under § 1983, and those claims remain DISMISSED WITH PREJUDICE.

On March 17, 2011, the Orleans Parish Criminal Court held Bean's Preliminary Hearing and heard a Motion to Suppress.  Hunt testified that he and Birks were on foot patrol in the Jackson Landing apartment complex when Birks observed Bean engaged in a hand-to-hand drug transaction, which Birks communicated to Hunt via radio.  Hunt testified that he and Birks approached Bean on the landing of the apartment complex, Birks conducted a pat-down search of Bean and a small amount of cocaine base fell out of Bean's jacket pocket, which Hunt picked up off of the ground. Hunt also testified that he and Birks then arrested Bean and brought him to the police station.

Bean filed a subpoena duces tecum in the Orleans Parish Criminal Court seeking Hunt's dental records.  Those records revealed that Hunt was at the dentist's office at the time that the police report indicates that he was investigating Bean.  After Hunt's dental records were presented to the court, the Orleans Parish District Attorney dropped the charges against Bean, and Bean was released from the Orleans Parish Prison on June 4, 2011.  Thereafter, Hunt pleaded guilty to perjury and malfeasance in office, and Birks pleaded guilty to malfeasance in office. Hunt and Bean both resigned from the NOPD.

On December 27, 2011, Bean, filed this suit against the City, the NOPD, Serpas, Hunt and Birks, alleging claims under 42 U.S.C. § 1983 and Louisiana state law for the violation of his civil rights.  In Count I, Bean alleges claims under § 1983 against Hunt and Birks.  In Count II, Bean alleges that the defendants conspired to violate his civil rights.  In Count III, Bean alleges § 1983 claims against the City and Serpas, in his individual capacity as a supervisor and his official capacity as the chief/superintendent of the NOPD.  Finally, in Count IV, Bean alleges various state law claims against Hunt, Birks, and the City, including false arrest, false imprisonment, aggravated kidnaping, criminal conspiracy, perjury, false swearing, false swearing for the purpose of violating

public health or safety, false statements concerning denial of constitutional rights, obstruction of justice, injuring public records, filing and maintaining false police records and malfeasance in office.[2]

The City and the Serpas filed a motion for judgment on the pleadings arguing that Bean failed to sufficiently state a claim against the City and Serpas in his official capacity that satisfies the requirements of Monell v. N.Y.C. Dept. of Soc. Serv., 98 S.Ct. 2018 (1978).  The City also argued that Bean failed to state a claim against it under the state law theory of respondeat superior, and Serpas argued that Bean failed to state a claim against him in his individual capacity.  Finally, the City argued that Bean cannot maintain a claim against it for punitive damages.  This court granted the motion as to Bean's punitive damages claim against the City and his individual capacity claim against Serpas.  This court denied the motion as to Bean's § 1983 claims against the City and Serpas in his official capacity, and as to his state law claims brought against the City under the theory of respondeat superior.[3]

Thereafter, Bean filed an amended complaint in which he added allegations to Count III, which includes § 1983 claims against the City and Serpas, in his official capacity as the chief/superintendent of the NOPD.  In the amended complaint, Bean alleges that Serpas was a

---

[2]  In his memorandum in opposition to the City and Serpas' prior motion for judgment on the pleadings (Doc. #34), Bean clarifies that he did not plead any state law claims against Serpas.  Bean also stipulated that the NOPD is not an entity capable of being sued, and his claims against the NOPD were dismissed with prejudice.  Neither Hunt nor Birks have answered this suit and the Clerk of Court entered defaults against them on July 20, 2012, and November 15, 2012, respectively. (Docs. #15 & 28).

[3]  In support of its prior motion for judgment on the pleadings as to Bean's state law claims against it, the City argued that Hunt and Birks were not acting in their official capacities under the color of law at all pertinent times.  This court denied the motion because it called for an analysis of the facts that was beyond the scope of a motion for judgment on the pleadings.

4

policymaker and supervisor "responsible for the training, supervision and discipline of both Hunt and Birks," and that "[n]either Hunt nor Birks were adequately trained, supervised and/or disciplined following repeated incidents of malfeasance, violations of NOPD policies and violations of laws of state law as reflected in their records obtained from the Public Integrity Bureau (PIB) of the New Orleans Police Department."  Bean then outlines the PIB complaints against Hunt and Birks. Specifically, Hunt's PIB record shows that in his four-year tenure with the NOPD, Hunt amassed twenty-three PIB complaints, which included allegations of excessive fore, unprofessional conduct and framing a defendant for possession of marijuana by planting drugs on her.  Hunt was also accused of working an unauthorized detail at a club on Bourbon Street.  Birks' PIB record shows that he obtained twelve PIB complaints during his four-year tenure with the NOPD.  Three of the complaints involved harassment, one involved improper detention, one involved an illegal traffic stop, three involved domestic violence, and in one instance Birks failed to report his citation for domestic violence to the NOPD.  Further, Birks and Hunt were accused of cutting off the power to an individual's home then conducting an illegal search.  None of the complaints against Hunt or Birks were sustained or resulted in discipline, except for Birks' failure to report the domestic violence citation and Hunt's unauthorized detail at the Bourbon Street club.  Bean alleges that:

> 65(M). The failure of the defendants, Serpas and the City of New Orleans to discipline and/or terminate [Birks and/or Hunt] for these prior acts of malfeasance, dishonesty, violations of NOPD policy and state law are policies of the City of New Orleans and Serpas.  Said policies directly resulted in the injuries and civil rights violations sustained by Bean.  By failing to discipline or terminate [Birks and/or Hunt] for these prior bad acts the City of New Orleans and Serpas condoned said unconstitutional polices and practices.

> 65(N). These repeated failures on the part of the defendants City and Serpas to address these previous civil rights violations by Hunt and Birks was an official policy of Serpas and the City.  This policy of

> deliberate indifference to past civil rights violations by said
> defendants resulted in the violation sustained by Bean.

On August 30, 2013, the City and Serpas filed a second motion for judgment on the pleadings or, alternatively, for summary judgment.  Defendants argue that Bean did not state a claim against them under 42 U.S.C. § 1983 and <u>Monell v. N.Y.C. Dept. of Soc. Serv.</u>, 98 S.Ct. 2018 (1978), because the NOPD had policies in place prohibiting Hunt's and Birks' behavior and to "ensure that all constitutional rights of citizens are protected."  Defendants also argue that Birks and Hunt were not acting in the course and scope of their employment with the NOPD when they committed perjury and malfeasance in office.

## ANALYSIS

**A.    Legal Standards**

### 1.   Rule 12(c) of the Federal Rules of Civil Procedure

A party may move for judgment on the pleadings after an answer has been filed.  FED. R. CIV. P. 12(c).  "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." <u>Chauvin v. State Farm & Cas. Co.</u>, 495 F.3d 232, 237 (5th Cir. 2007).  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007) (quoting <u>Bell Atlantic v. Twombly</u>, 127 S.Ct. 1955, 1964-65 & 1973 n.14 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id</u>. at 1965.  The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." <u>In re S. Scrap Material Co., LLC</u>, 541 F.3d 584, 587 (5th Cir. 2008). A district court may consider only the contents of the pleading and the attachments thereto.

Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P.

12(b)(6)).

      2.  **Summary Judgment**

Summary judgment is proper when, viewing the evidence in the light most favorable to the

non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to

judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir.

1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that

there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the

existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The

non-movant cannot satisfy the summary judgment burden with conclusory allegations,

unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving

party does not have to submit evidentiary documents to properly support its motion, but need only

point out the absence of evidence supporting the essential elements of the opposing party's case.

Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.**      **Section 1983**

Section 1983 provides a remedy against "every person," who under color of state law,

deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C.

§1983; Monell, 98 S.Ct. 2018.  Section 1983 is not itself a source of substantive rights; it merely

provides a method for vindicating federal rights conferred elsewhere. Olabisiomotosho v. City of

Hous., 185 F.3d 521, 525 n. 3 (5th Cir. 1999).

To pursue a claim under section 1983, plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and; (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. Sw. Bell Tel., LP v. City of Hous., 529 F.3d 257, 260 (5th Cir. 2008); see also West v. Atkins, 108 S.Ct. 2250, 2255-54 (1988). Bean alleges that the City is liable for the violations of his civil rights, and that Serpas is liable in his official capacity as the Chief/Superintendent of the NOPD.

A suit against Serpas in his official capacity is in essence a suit against the City. Woodard v. Andrus, 419 F.3d 348, 352 (5th Cir. 2005) (citing Monell, 98 S.Ct. at 2035, n.55). A local governmental body is liable for damages under §1983 for constitutional violations resulting from an official city policy. See Monell, 98 S.Ct. at 2035-36. A municipality or government body cannot be held vicariously liable under § 1983 for the constitutional torts of its employees or agents. Id. at 2037; Piotrowski v. City of Hous., 237 F.3d 567, 578 (5th Cir. 2001) ("*Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such a reading"). "Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." Piotrowski, 237 F.3d at 578 (citations omitted). To establish liability for a constitutional violation against the governmental bodies, the plaintiff must prove three elements: (1) a policy maker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. Monell, 98 S.Ct. at 2037.

The "policy maker" prong is satisfied if actual or constructive knowledge of a policy is attributable to the municipality's governing body or to an official to whom the municipality has

delegated policy making authority.  Webster v. City of Hous., 735 F.2d 838, 842 (5th Cir. 1984) (en banc).  Presumptive policymakers for the police include the mayor, the city counsel and the chief of police.  Id.  Serpas, as the Chief/Superintendent of the NOPD is a policy maker for the City.

The "official policy" prong requires that the deprivation of constitutional rights be inflicted pursuant to an official custom or policy.  "Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations." Piotrowski, 237 F.3d at 579.   However, a policy may also be a custom that is " . . . a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy . . ." Id. (quoting Webster, 735 F.2d at 841).

"[A] city policy of inadequate officer discipline could be unconstitutional if it was pursued with deliberate indifference toward the constitutional rights of citizens," and could be evidenced by "purely formalistic investigation [of alleged officer wrongdoing] in which little evidence was taken, the file was bare, and the conclusions of the investigator were perfunctory." Id. at 582.  "[A] pattern of abuses that transcends the error made in a single case" could demonstrate the existence of a policy and official deliberate indifference. Id.

Further, the failure to train or inadequate training of officers can be an official policy that subjects the municipality to liability under § 1983, "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." City of Canton, Ohio v. Harris, 109 S.Ct. 1197, 1204 (1989).  In Bd. of Comm'rs of Bryan Cnty., Okla. v. Brown, 117 S.Ct. 1382, 1390 (1997), the Supreme Court of the United States explained that an "inadequate training claim" ordinarily involves

a deficient training "program," necessarily intended to apply over time to multiple employees.  Existence of a "program" makes proof of fault and causation at least possible in an inadequate training case.  If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for.  Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action - the "deliberate indifference" - necessary to trigger municipal liabilty. . . In addition, the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in the particular incident, is the "moving force" behind the plaintiff's injury.

To satisfy the "moving force" prong, the plaintiff must show culpability and causation.  A municipality is culpable under §1983 if: (1) the official policy is facially unconstitutional; or (2) if a "facially innocuous" policy was "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." Piotrowski, 237 F.3d at 579 (quoting Brown, 117 S.Ct. at 1389). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." Id. (quoting Bryan Cnty., 117 S.Ct. at 1389). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . ." Alton v. Tex. A & M Univ., 168 F.3d 196, 201 (5th Cir. 1999). "For an official to act with deliberate indifference, the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Harris, 109 S.Ct. at 1204. Generally, proving deliberate indifference requires proving a pattern of violations. Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003) (quoting Thompson v. Upsher Cnty., 245 F.3d 447, 459 (5th Cir. 2001)).

Causation requires a "direct causal link between the municipal policy and the constitutional deprivation." Piotrowski, 237 F.3d at 580.  A Monell plaintiff must "establish both the causal link ("moving force") and the City's degree of culpability ("deliberate indifference" to federally protected rights)" because "[w]here a court fails to adhere to the rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability." Id. (citing Snyder v. Trepagnier, 142 F.3d 791, 796 (5th Cir. 1998)).

The City and Serpas agree that Serpas is a policy maker.  However, they argue that they cannot be held liable in this case because the NOPD had policies in place to prevent Hunt's and Birks' behavior regarding Bean.  The City and Serpas cite NOPD policies related to arrests and searches without warrants intended to protect the citizens' constitutional rights.  They also cite policies regarding an officer's truthfulness, duty to remain in his assigned area, and avoid abusing his position.  Bean argues that summary judgment is inappropriate because Hunt's and Birks' behavior was directly related to inadequate training and discipline and the failure of the NOPD to adhere to its own policies.

Summary judgment is inappropriate in this case because there are genuine issues of material fact regarding whether the City and Serpas in his official capacity acted with deliberate indifference in promulgating policies and/or customs of ineffective and inadequate officer training, accountability and discipline that caused the alleged violation of Bean's constitutional rights.[4]  On March 16, 2011,

---

[4] The City and Serpas also seek judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  As explained above, the standard applied to a Rule 12(c) motion is the same standard that is applied to motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  This court denied the City and Serpas' Rule 12(b)(6) motion to dismiss. (Doc. #36).  Bean's amended complaint added factual allegations to his § 1983 claim against the City and Serpas in his official capacity, specifying the lack of training and discipline.  The amended complaint otherwise reiterated the allegations of Bean's first complaint.  Thus, the City and Serpas' motion for judgment on the pleadings is DENIED for the reasons stated in this court's ruling on their prior Rule 12(b)(6) motion to dismiss. (Doc. #36).

the Civil Rights Division of the United States Department of Justice issued a report on its

investigation of the NOPD.  The opening lines of the report state that: "[t]he NOPD has long been

a troubled agency.  Basic elements of effective policing – clear policies, training, accountability, and

confidence of the citizenry – have been absent for years."  The report further states that:

> The deficiencies in the way NOPD polices the City are not simply
> individual, but structural was well.  For too long, the Department has
> been largely indifferent to widespread violations of law and policy by
> its officers.  NOPD does not have in place the basic systems known
> to improve public safety, ensure constitutional practices, and promote
> public confidence.  We found that the deficiencies that lead to
> constitutional violations span the operation of the entire Department
> from how officers are recruited, trained, supervised, and held
> accountable, to the operation of Paid Details.  In the absence of
> mechanisms to protect and promote civil rights, officers too
> frequently use excessive force and conduct illegal stops, searches and
> arrests with impunity.
>
> *       *       *
>
> NOPD still does not provide meaningful in-service training to
> officers on how to properly carry out stops, searches, and arrests.
> NOPD's failure to train officers or otherwise provide guidance on the
> limits and requirements of the Fourth Amendment contributes
> directly to the pattern of unconstitutional stops, searches, and arrests
> we observed.
>
> *       *       *
>
> Additionally, the Department's organizational focus on arrests,
> particularly in combination with its poor training and policies,
> encourages stops without reasonable suspicion, illegal pat downs, and
> arrests without probable cause . . . As one commander told us,
> "[t]hese officers are under the gun to make arrest, arrest, arrest, which
> leads to civil rights violations and complaints."
>
> *       *       *
>
> The Department's failure to provide sufficient guidance, training, and
> support to its officers, as well as its failure to implement systems to
> ensure officers are wielding their authority effectively and safely,

have created an environment that permits and promotes constitutional harm.  We found deficiencies in a wide swath of City and NOPD systems and operations, including failures to: adopt and enforce appropriate policies; properly recruit, train, and supervise officers; adequately review and investigate officer use of force; fully investigate allegations of misconduct; identify and respond to patterns of at-risk officer behavior; implement community policing; oversee and control the system of Paid Details; provide officer assistance and support; or enact appropriate performance review and promotional systems.

*          *          *

There is a general lack of adherence to policy, exacerbated by pervasive tolerance by NOPD supervisors and commanders for officers' routine failure to comply with policy.

*          *          *

Shortcomings at the recruitment, field, and in-service stages of training have left NOPD officers ill-equipped to perform their duties in a safe, constitutional, and respectful manner. We found systematic problems in training of every type, including tactical, operational, legal, ethical, and professionalism training.  Officers receive an insufficient amount of training – there has been almost no in-service training for the past five years – and the instruction officers do receive is often out-of date, conflicts with NOPD policies or current legal requirements, or fails to address officers' most pressing training needs.   Our investigation found direct links between inadequate training and serious, systematic problems in use of force; stops, searches, and arrests; supervision; interacting with and building partnerships with members of the community; and racial, ethnic and gender bias in policing.

*          *          *

NOPD's system for receiving, investigating, and resolving misconduct complaints, despite many strengths and recent improvements, does not function as an effective accountability measure.  Policies and practices for complaint intake do not ensure that complaints are complete and accurate, systematically exclude investigation of certain types of misconduct, and fail to track allegations of discriminatory policing.

13

*      *      *

> Discipline and corrective action are meted out inconsistently and, too often, without sufficient consideration of the seriousness of the offense and its impact on the police-community relationship.

*      *      *

> These deficiencies render NOPD's system for investigating and responding to allegations of officer misconduct ineffective at changing officer behavior or holding officers responsible for their actions.   Consequently, the system has little legitimacy in the Department or in the broader New Orleans community.

The Department of Justice report coupled with Hunt's and Birks' extensive PIB files create factual issues regarding whether the City and Serpas were deliberately indifferent to Hunt's and Birks' lack of training and disciple, and whether that indifference caused the violation of Bean's civil rights. Therefore, the City and Serpas' motion for judgment on the pleading, or alternatively motion for summary judgment is DENIED as to Bean's § 1983 claims against the City and Serpas.

## C.      Respondeat Superior State Law Claims Against the City

The City argues that Bean has not stated a claim against it for state law claims under the theory of respondeat superior because Hunt and Bean were not acting in the course and scope of their employment with the NOPD when they: committed malfeasance in office (Hunt and Birks); committed perjury (Hunt); and went to the dentist's office while on duty (Hunt).

Louisiana Civil Code article 2320 provides that employers are responsible for damages caused by their employees "in the exercise of the functions in which they are employed." "Although an employment relationship may in fact exist, the employer will not be liable for the substandard conduct of the employee unless the latter can be fairly said to be within the course and scope of the employment with the former." Brasseaux v. Town of Mamou, 752 So.2d 815, 820 (La. 2000) (citing

14

Russell v. Noullet, 721 So.2d 868 (La. 1998); Baumeister v. Plunkett, 673 So.2d 994 (La. 1996)). An employees tortious conduct may be imputed to the employer when the employee's conduct is "so closely connected in time, place, and causation to his employment-related duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest." Id. (quoting LeBrane v. Lewis, 292 So.2d 216, 218 (La. 1974)). The Supreme Court of Louisiana has "stated that an employee's conduct is generally within the course and scope of his employment if the conduct is of the character and nature that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." Id. (citing Orgeron on Behalf of Orgeron v. McDonald, 639 So.2d 2247, 226-27 (La. 1994)).

Bean alleges that Hunt and Birks committed various torts against him, including false arrest and false imprisonment, while they were working in the course and scope of their employment as NOPD officers. Hunt's and Birks' planting drugs on Bean and falsely arresting him for cocaine possession occurred while Hunt and Birks were on duty. Arresting individuals is in the nature of their employment and for the purpose of serving their employer. Further, Hunt committed perjury to lend legitimacy to Bean's arrest. Therefore, Bean has stated a claim against the City for Louisiana state law torts under the theory of respondeat superior, and the City's motion for judgment on the pleadings on these claims is DENIED.

**CONCLUSION**

**IT IS HEREBY ORDERED** that the Motion to for Judgment on the Pleadings or

Alternative Motion for Summary Judgment (Doc. #51) filed by defendants, the City of New Orleans

and Chief/Superintendent Ronal Serpas, in his official capacity is **DENIED.**

New Orleans, Louisiana, this ___31st___ day of October, 2013.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

16